UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re Carefree Living of America (Burnsville), Inc., Bky. Case No. 01-33545
In re Carefree Living of American (St. Cloud), Inc., Bky. Case No. 01-33546
In re Carefree Living of American (Brainerd), Inc., Bky. Case No. 01-33547
(Jointly Administrated)

Debtors.

Mahoney and Hagberg,

Appellant,

v.

Brian Leonard, Chapter 11 Trustee,

Appellee.

Civ. No. 02-806 (RHK)

**ORDER**

## Introduction

Appellant Mahoney and Hagberg ("Appellant") seeks leave to appeal the Bankruptcy Court's Order dated March 26, 2002, which denied its motion for an order removing Brian F. Leonard as the Chapter 11 Trustee and removing Spectrum Community Health Services, Inc. from providing management services to the debtors.

## Background

Wilnard Selbak ("Selbak") filed a voluntary petition for Chapter 11 bankruptcy on or about March 3, 1998 (the "Selbak Bankruptcy"), which was converted to a Chapter 7 bankruptcy on or about July 1, 1998. (Bankr. Appeal Doc. No. 5 at 34 (Motion for Leave



JUN 13 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD JUN 13 2002
DEPUTY CLERK

to Appeal).) Selbak was the founder and shareholder in Carefree Living of America (Burnsville), Inc., Carefree Living of America (St. Cloud), Inc., and Carefree Living of America (Brainerd), Inc. (the "Bankrupt Entities"). (Id.) In the Selbak Bankruptcy, his ownership and claims involving the Bankrupt Entities were heavily litigated. (Id. at 35.)

On August 17, 2002, each of the Bankrupt Entities filed voluntary Chapter 11 petitions (the "Carefree Bankruptcy"), and those petitions are now being jointly administered. (Id.) Appellant is both a secured and unsecured creditor in the Carefree Bankruptcy. (Id.)

Both before and after the Carefree Bankruptcy, the Bankrupt Entities were managed by Summa Management, Inc. ("Summa"). Summa had retained Spectrum Community Health Services, Inc. ("Spectrum") to provide certain professional nursing services for the facilities it manages, including the Bankrupt Entities. (Id.) The Bankrupt Entities and Summa had serious disputes with Spectrum over fees that it had charged for services performed for the Bankrupt Entities. (Id.) Although the Bankrupt Entities dispute this number, Spectrum's unsecured claims for these services exceed $500,000. On September 28, 2000, Spectrum was elected to be one of the members of the unsecured creditor's committee (the "Committee") of the Carefree Bankruptcy, and Merle Sampson ("Sampson"), Spectrum's president and owner, was elected to be chairman of the Committee. (Id.)

At some point, Summa determined that it could increase the Bankrupt Entities' cash flow by over $45,000 a month by terminating Spectrum's contract and having the

Bankrupt Entities perform the services themselves. (Id. at 35-36.) Summa attempted to terminate its contract with Spectrum and in response, on November 14, 2001, the Committee brought a motion to (1) remove Summa from managing the Bankrupt Entities, (2) appoint a Chapter 11 Trustee for the Carefree Bankruptcy, and (3) keep Spectrum's contract to provide nursing services for the Bankrupt Entities. (Id. at 36.) First Union National Bank ("First Union N.B."), the largest creditor of the Bankrupt Entities, joined the Committee's request to appoint a trustee and asserted also that pursuant to a loan agreement with the Bankrupt Entities, that it had the right to appoint a trustee. (Id.) On January 2, 2002, pursuant to a stipulation entered into between Summa and First Union N.B., the Bankruptcy Court ordered that a Chapter 11 Trustee be appointed in the Carefree Bankruptcy; on January 4, 2002, Brian F. Leonard ("Leonard") was appointed as Trustee. (Id. at 37.)

Prior to his appointment, Leonard disclosed to the Bankruptcy Court that he had "filed a proof of claim in the Will Selbak bankruptcy case for expert witness expenses and fees as a potential witness for the Ch. 7 trustee in that case, in an amount less than $1,500" and that he had no other connection with any of the other parties in interest. (See id. Ex. A (Verified Statement).) Since becoming Trustee, Leonard has replaced Summa as manager of the Bankrupt Entities and retained Spectrum to manage them, even though Spectrum and the Bankrupt Entities are in dispute over $500,000 charged in fees and Spectrum is one of the Bankrupt Entities largest unsecured creditors. (Id. at 39.)

On March 5, 2002, Appellant moved for an order (1) removing Leonard as the

Chapter 11 Trustee and (2) removing Spectrum from providing management services to the Bankrupt Entities. The Office of the United States Trustee, First Union N.B., and the Committee all opposed Appellant's motion. On March 26, 2002, United States Bankruptcy Judge Gregory F. Kishel denied Appellant's motion in its entirety. (See Bankr. Appeal Doc. No. 2.) On April 5, 2002, Appellant filed a motion pursuant to 28 U.S.C. § 158(a), seeking leave of this Court to appeal the Bankruptcy Court's March 26, 2002 Order. (See Bankr. Appeal Doc. No. 3.)

**Analysis**

A district court has discretion to consider interlocutory appeals from bankruptcy courts. See 28 U.S.C § 158(a) (explaining that "with leave of the Court," district courts of the United States have jurisdiction to hear interlocutory bankruptcy orders and decrees); see also Lewis v. United States Farmers' Home Admin., 992 F.2d 767, 771 (8th Cir. 1993). Neither § 158 nor the Bankruptcy Rules provide any specific standards for evaluating whether to allow interlocutory appeals; thus, district courts typically utilize the standards that govern appeals of interlocutory orders from district courts to courts of appeals pursuant to 28 U.S.C. § 1292(b). See Kroh Bros. Dev. Co. v. United Missouri Bank of Kansas City, 101 B.R. 1000, 1004 (W.D. Mo. 1989). In the Eighth Circuit, an interlocutory appeal from an order of the bankruptcy court will be granted only if the order presents important questions of law or extraordinary circumstances. See Aetna Life Ins. Co. v. Leimer, 724 F.2d 744, 744 (8th Cir. 1984). Thus, a court must consider whether (1) the appeal involves a controlling issue of law; (2) there is substantial ground

for difference of opinion on that issue of law; and (3) an immediate appeal from the order will materially advance the ultimate termination of the litigation. Kroh Bros., 101 B.R. at 1004.

**I. The Trustee**

In sum, Appellant seeks leave to appeal because Leonard failed to disclosure that he is not a disinterested party. Leonard, in the Trustee's Answer and Objection in Opposition to Motion of Mahoney & Hagberg for Authority to File an Interlocutory Appeal, argues that the Carefree Bankruptcy is progressing as a normal Chapter 11 bankruptcy and that Appellant has not demonstrated that cause exists to remove him as Trustee. (See Bankr. Appeal Doc. No. 6 at 56.) He also argues that there is no controlling question of law and that an immediate appeal does not advance the ultimate termination of litigation. (Id. at 57.)

Appellants arguments about Leonard's associations with parties to the Bankrupt Entities are summarized as follows:

1. Leonard is an attorney with the law firm that represented First Union-Mortgage (a sister corporation to First Union N.B.) in connection with the Selbak bankruptcy. As Trustee, he has negotiated stipulations with First Union N.B. and withdrawn the proposed sale of some of the Bankrupt Entities' property. As a result, Appellant claims, that First Union N.B. is the only creditor that remains assured of payment.

2. The Chapter 7 Trustee in the Selbak Bankruptcy, Dwight Lindquist, is also a creditor in the Carefree Bankruptcy. In connection with the Selbak bankruptcy, Lindquist retained Leonard, in part, to evaluate an alleged malpractice claim by Selbak against Appellant. Lindquist was also retained to value the stock Selbak claimed he owned in the Bankrupt Entities.

> 3. For his services in the Selbak Bankruptcy, Leonard submitted an application for fees, and Summa objected to it. Leonard then withdrew his application.

(Bankr. Appeal Doc. No. 5 at 37-38.) From these allegations, Appellant asserts that Leonard is not a disinterested trustee and also implies that Leonard is biased against Appellant.

In response, Leonard explains that a lawyer from his law firm represented First Union-Mortgage in the Selbak Bankruptcy. (Bankr. Appeal Doc. No. 6 at 67 (Trustee's Verified Memorandum in Opposition to Motion of Mahoney & Hagberg, P.A. to Remove Chapter 11 Trustee and Spectrum Community Health Services, Inc).) First Union-Mortgage is a subsidiary of First Union Corporation; another subsidiary of First Union Corporation is First Union N.B. The subsidiary corporations, Leonard asserts, have separate interests in this proceeding. (Id. (citing case law to support his proposition).) Because Leonard and his law firm did not have "an interest materially adverse to the interest of the estate or of any class of creditors," Leonard asserts that he is a disinterested Trustee under the Bankruptcy Code. (See id (quoting § 101(14) of the Bankruptcy Code).)

Leonard also explains that Kathleen Zeller (the principal of Summa), Summa, and Carefree Living of America (Minnetonka), Inc. are clients of Appellant's law firm. (Id. Ex. B at 66.) Appellant has represented Selbak and others in stock-related transactions, which have been the subject of litigation in Minnesota and Florida state courts. (Id.) Leonard believes that Appellant's claim of a $1.8 million debt owed by the Bankrupt

Entities relates to the Minnesota and Florida cases. Leonard has written at least six letters to Appellant seeking information to support Appellant's $1.8 million dollar claim of debt. (Id.; see also Exs. A-G.) Appellant has furnished some, but not all, of the information that Leonard has requested. (Id.) Moreover, Leonard states that in connection with his work with the Selbak Bankruptcy, he reviewed only the value of the malpractice claim against Appellant and not the underlying facts of the case. (Bankr. Appeal Doc. 6 Ex. M (Aff. of Brian F. Leonard.) Therefore, he asserts that he is not biased against Appellant.

### II. Spectrum

Appellant contends that Spectrum should be removed from managing the Bankrupt Entities because of the fee dispute between the parties and because Summa, before Leonard was appointed Trustee, had determined that it could increase the Bankrupt Entities' cash flow if they did not use Spectrum's services. In response, Leonard asserts that it did not need approval to replace Summa with Spectrum as the manager of the Bankrupt Entities because Spectrum is not a "professional person," and therefore, court approval was not required. (Bankr. Appeal Doc. 6 at 71.)

## Conclusion

Based on the Court's review of the record, it is clear that no important question of law or extraordinary circumstances are presented by the proposed appeal. Accordingly, and upon all of the files, records and proceedings herein, **IT IS ORDERED** that the

Motion for Leave to Appeal Under 28 U.S.C. § 158(a) to the United States District Court is **DENIED**.

Dated: June 12, 2001

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

MINNESOTA CHAPTER OF THE FEDERAL BAR ASSOCIATION

In connection with
The Federal Judiciary

# *28th Annual Federal Court Practice Seminar*

**June 19, 2002**
**8:00 am—5:15 pm**

**Minneapolis Convention Center**
**1301 Second Avenue South**
**Room 208**
**Minneapolis, MN 55402**
**(612) 335-6000**

**The Minnesota Chapter of the Federal Bar Association**

c/o Kelly & Berens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
**PAID**
Minnespolis, MN
Permit No. 2657

**Application Pending for 7.5 CLE Credits Including**
**2 Ethics and 1 Bias Credit**

## *Featured Speakers Include:*

**District of Minnesota**

**Judge David S. Doty**

**Judge Donovan W. Frank**

**Judge Paul A. Magnuson**

**Judge Ann D. Montgomery**

**Judge John R. Tunheim**

**Chief Magistrate Judge Jonathan Lebedoff**

**Magistrate Judge Arthur J. Boylan**

**United States Bankruptcy Court**
**District of Minnesota**

**Judge Robert J. Kressel**

## Morning Session:

| | |
|---|---|
| 7:30-8:00 | **Registration** |
| 8:00-8:15 | **Opening Remarks and Welcome,** ***Judge Ann D. Montgomery*** |
| 8:15-9:00 | **Securities Law Issues in the Wake of Enron,** ***Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)*** |
| 9:00-9:45 | **Current Issues in Employment Law,** ***Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)*** |
| 9:45-10:00 | **Morning Break** |
| 10:00-10:45 | **Current Initiatives in the U.S. Attorneys' Office,** ***Tom Heffelfinger (U.S. Attorneys Office)*** |
| 10:45-11:45 | **Discovery Disputes: Professionalism in the Practice of Law?,** ***Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,*** |
| 11:45-12:45 | **Lunch (Room 211)** |

11:45-12:45 Lunch (Room 211)

## Afternoon Session:

| | |
|---|---|
| 12:45-1:30 | **The Clerk's Office Can Be Your New Best Friend,** ***Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon*** |
| 1:30-2:15 | **How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How,** ***Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi), Stephen J. Davidson (Leonard, Street and Deinard)*** |
| 2:15-3:15 | **Issues in the Wake of 9/11: Racial Profiling --** ***Daniel M. Scott (U.S. Federal Public Defenders' Office)***; **Response by the Department of Justice --** ***Tony Brown (U.S. Attorneys Office)*** |
| 3:15:3:30 | **Afternoon Break** |
| 3:30-4:15 | **Update on Technology Tools for Litigating in Federal Court,** ***Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)*** |
| 4:15-5:15 | **Ethics in "Real Life" Practice Situations,** ***Martin A. Cole (Lawyers Professional Responsibility Office)*** |

## *Seminar Registration*

☐ Member $195.00

☐ Non-Member $225.00

Name ______________________

Firm/Employer ______________________

Address ______________________

______________________

______________________

Phone ______________________

E-Mail ______________________

**Complete registration form and send with check payable to:**

**Minnesota Chapter, FBA**
**c/o Nancy Gustafson**
**Kelly & Berens, P.A.**
**Suite 3720 IDS Center**
**80 South Eighth Street**
**Minneapolis, Minnesota 55402**

**Not a Member? Join the FBA**

*To apply on-line or to download application form go to http://www.fedbar.org and click on "Join the FBA."*

Questions call: Barbara P. Berens, Vice President, Planning, Minnesota Chapter FBA
(612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.

Catherine A. McEnroe, Leonard, Street and Deinard

Celeste M. Shahidi, U.S. Courthouse Minneapolis Building

Susan Nolting, U.S. Department of Justice

Maureen Watz Gornik, Warren E. Burger Federal Building